IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JERRI STOLTENBERG, ) | |
| ) | 8:04CV288 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | MEMORANDUM AND ORDER |
| UNUM LIFE INSURANCE COMPANY ) | |
| OF AMERICA d/b/a UNUM ) | |
| PROVIDENT CORPORATION, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on defendant Unum Life Insurance Company of America's ("Unum's") motion to dismiss plaintiff's punitive damages claim.[1] Filing No. 51. This is an action asserting state law claims for breach of contract and the tort of bad faith in connection with Unum's denial of plaintiff Jerry Stoltenberg's claim for disability benefits under a policy of insurance issued by Unum. Plaintiff seeks punitive damages in connection with her claims. Unum seeks dismissal of plaintiff's prayer for punitive damages, contending that punitive damages are not recoverable under Nebraska law. On its own motion, the court will also address jurisdictional issues.

I.   JURISDICTION

This action was originally filed in state court as an action for benefits under the Employee Retirement Income Security Act, 29 U.S.C. § 1132 *et seq.* ("ERISA"). Filing No. 1, Exhibit ("Ex.") 1, Complaint. The action was removed to federal court with jurisdiction premised on both a federal question and diversity of citizenship. *Id.* at 1. The petition was later amended, with leave of court and consent of the defendant, to assert the state-law

---

[1]Defendant's motion is properly viewed as a motion to strike plaintiff's prayer for punitive damages since an award of punitive damages is simply an element of another claim, and not a freestanding claim.

claims and to omit the ERISA claim. See Filing Nos. 37 (Motion for Leave to File Third Amended Complaint), 41 (Stipulation), 48 (Order), and 49 (Third Amended Complaint). Although it is not clear from the record, the court assumes that the ERISA claim was omitted because, although the disability insurance policy at issue is a benefit incident to employment, plaintiff's employer, the University of Nebraska Medical Center ("UNMC"), is a government employer exempt from ERISA. *See Fromm v. Principal Health Care of Iowa, Inc.,* 244 F.3d 652, 653 (8th Cir. 2001) (noting that ERISA normally preempts a state law action of this sort, but government employers are exempt from ERISA's coverage). Plaintiff alleges that UNMC established and sponsored the disability plan. Filing No. 49, Third Amended Complaint at 2. Even though a private company may administer the plan, it is still a "governmental plan" exempt from ERISA. *See id.* (holding a group benefits policy purchased by the city for employees was a "governmental plan," even though the plan was offered and administered by a private insurer). A district court does not have federal-question subject matter jurisdiction over a benefits plan that is exempt from ERISA. *Id.*

This court's jurisdiction must thus be based on diversity of citizenship under 28 U.S.C. § 1332. Diversity jurisdiction requires that the matter in controversy "exceeds the sum or value of $75,000.00, exclusive of interest and costs," and is between citizens of different states. 28 U.S.C. § 1332(a)(1). Whether or not plaintiffs satisfy the $75,000.00 amount-in-controversy requirement under 28 U.S.C. § 1332 is a jurisdictional issue. *Trimble v. Asarco, Inc.*, 232 F.3d 946, 954 n.9. (8th Cir. 2000) (noting that jurisdictional issues, whether they involve questions of law or fact, are for the court to decide).

Whenever it appears, by suggestion of the parties or otherwise, that the court lacks jurisdiction of the subject matter, the action is subject to dismissal. Fed. R. Civ. P.

12(h)(3). Thus, even if the allegation of jurisdictional amount has not been challenged, a court has a duty to ensure that the amount in controversy satisfies the statutory requirements. *James Neff Kramper Family Farm Partnership v. IBP, Inc.*, 393 F.3d 828, 830 (8th Cir. 2005). The burden is on the party invoking federal jurisdiction to show by a preponderance of the evidence the claims originally asserted by plaintiff could legally satisfy the amount in controversy requirement. *See Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002) (noting "[t]he jurisdictional fact . . . is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude they are"). A district court is required to resolve all doubts about federal jurisdiction in favor of remand. *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 624 (8th Cir. 1997).

The amount claimed by plaintiff generally controls in determining the amount in controversy. *See Zunamon v. Brown*, 418 F.2d 883, 885 (8th Cir. 1969). However, "[n]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Osborne v. United States,* 918 F.2d 724, 730 (8th Cir. 1990). If it appears to a legal certainty that the plaintiff cannot in good faith claim the jurisdictional amount, dismissal for lack of subject matter jurisdiction is warranted. *See James Neff Kramper Family Farm,* 393 F.3d at 831.

In the present case, the plaintiff seeks special damages in the amount of $33,677.26, plus compensatory and punitive damages as allowed by law and costs and attorney fees. *See* Filing No. 49, Third Amended Complaint at 7. The court must thus determine whether a fact finder could legally conclude, from the pleadings and proof adduced to the court, that the damages that the plaintiff suffered are greater than the

jurisdictional threshold. *See Kopp,* 280 F.3d at 885. An amount that a plaintiff claims is not "in controversy" if no fact finder could legally award it. *Id.* Thus, the court's jurisdiction will be determined with reference to its findings in connection with plaintiff's damages claims, since the court is without jurisdiction if, as a matter of law, the amount plaintiff could recover is fixed below the jurisdictional amount. *Id.*

As discussed below, Nebraska law does not allow recovery of punitive damages. Accordingly, if Nebraska law applies, no fact finder could award such damages and a prayer for such damages could not be considered in determining whether the requisite jurisdictional amount has been pled. Also, only statutory attorney fees count toward the jurisdictional minimum calculation. *Crawford v. F. Hoffman-LaRoche*, *Ltd.*, 267 F.3d 760, 766 (8th Cir. 2001). Nebraska law allows recovery of attorney fees in an action against an insurer. Neb. Rev. Stat. § 44-359.

Although a plaintiff can recover damages for mental suffering as well as economic damages proximately caused by an insurer's bad faith settlement or denial of a claim, the parties have not alleged the amount plaintiff seeks for such award. *See Ruwe v. Farmers Mut. United Ins. Co.*, 469 N.W.2d 129, 135 (Neb. 1991). The court is unable to find that plaintiff's claim can satisfy the jurisdictional threshold for an amount in controversy. It thus appears that this court may not have jurisdiction and the matter may have been improvidently removed. Accordingly, the parties will be directed to brief the jurisdictional amount issue.

II. MOTION TO DISMISS

Defendant seeks dismissal of plaintiff's claim for punitive damages. In considering a motion to dismiss a claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon

which relief can be granted, the court must assume all the facts alleged in the complaint are true and must liberally construe the complaint in the light most favorable to the plaintiff. *Schmedding v. Tnemec Co., Inc.,* 187 F.3d 862, 864 (8th Cir. 1999). A Fed. R. Civ. P. 12 (b)(6) motion to dismiss a claim should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief. *Id.* Thus, as a practical matter, a Rule 12 (b)(6) dismissal should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. *Id.* Defendant Unum contends that plaintiff's claims are governed by Nebraska law and punitive damages are not allowed in Nebraska. Plaintiff contends that the law of Delaware, where defendant Unum is incorporated, should apply. The court must thus determine which state's law is applicable to this action.

Plaintiff first asserts that the earlier order granting leave to amend her complaint effectively determined that her claim for punitive damages could withstand a motion to dismiss. That is not the case. Plaintiff was granted leave to amend her complaint on a finding that "the defendant failed to carry its burden of establishing leave to amend would be 'clearly frivolous or legally insufficient on its face.'" Filing No. 48, Order at 5. The ruling does not imply that plaintiff's amended claims will automatically withstand a motion to dismiss. In fact, the court stated that "[w]hile plaintiff may or may not prevail on [the choice-of-law] issue, the issue should be determined on the merits, rather than in the context of a motion to amend." *Id.* Moreover, plaintiff's reliance on *Hoover v. Langston Equip. Assoc.*, Inc., 958 F.2d 742 (6th Cir. 1992) is misplaced. *Hoover* stands only for the proposition that the court can deny a motion to amend if the amended pleading could not withstand a motion to dismiss. *Id.* at 745. The converse, however, is not true; the granting

5

of leave to amend does not mean a claim will survive a motion to dismiss. The court finds that the choice of law issue was not resolved in the earlier order and the law of the case doctrine has no application in these circumstances.

In diversity cases, the choice of law is governed by the forum state's choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Nebraska follows the Restatement (Second) of Conflicts of Laws. *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th Cir. 2001). For tort claims, the Restatement provides that "[t]he rights and liability of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145. The court should consider: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties centered." *Id.*

Applying those factors, the court finds that Nebraska has the most significant relationship to the tortious conduct at issue. Plaintiff is a Nebraska resident. The disabling medical condition that is the subject of her claim arose in Nebraska, and the diagnosis and treatment of her condition took place in Nebraska. The disability policy was issued to plaintiff through her employer, an agency or instrumentality of the State of Nebraska. Unum is authorized to conduct business in Nebraska and has solicited business in this state. The only connection that Delaware has to the litigation is that defendant is incorporated there. Significantly, a corporation's place of incorporation is less important than other factors. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145, cmt. e.

With respect to contract claims, Nebraska courts will generally honor the parties' choice of law. *See Vanic v. Oehm*, 526 N.W.2d 648, 651 (Neb. 1995). If the parties have agreed on a choice of law, the chosen state's law will apply unless: 1) another state has a materially greater interest in the issue, and 2) the chosen law would violate a fundamental policy of the state with the greater interest. *JRT, Inc. v. TCBY Systems, Inc.*, 52 F.3d 734, 739 (8th Cir. 1995).

For the resolution of contract conflicts, Nebraska has adopted the Restatement (Second) of Conflict of Laws § 188. *Johnson v. United States Fid. & Guar. Co.*, 696 N.W.2d 431, 441 (Neb. 2005). Section 188 of the Restatement provides that the rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the [general choice-of-law] principles. *Id.* In the absence of an effective choice of law by the parties, the Restatement provides that the contacts to be taken into account in applying general conflict of laws principles include the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.*

Moreover, while Section 188 sets out the general contacts to consider in contract cases involving conflict of laws disputes, the Restatement § 193 addresses the issue of covered risks in an insurance policy. *Id.* at 441-42. Usually, when dealing with contract claims, the most compelling factor is the protection of the parties' justified expectations. *See Johnson,* 696 N.W.2d at 442; Restatement § 188, comment b; Restatement § 193, comment c. at 612 ("location of the insured risk . . . has an intimate bearing upon the risk's

7

nature and extent and is a factor upon which the terms and conditions of the policy will frequently depend").

However, with respect to life insurance and disability insurance contracts, "[e]ffect will not be given to a choice of law provision in a life insurance contract designating a state whose local law gives the insured less protection than he would receive under otherwise applicable law. . . ." *See* RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 192, cmt. e.  A choice of law provision affording an insured less protection is more likely to be given effect in a group policy than in an individual policy because the organization that procures the master policy will usually have a stronger bargaining position than an individual insured "with the result that the choice-of-law provision is less likely to have a 'take-it-or-leave-it' character." *See* RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 192, cmt. h.

Applying those principles, the court finds that Nebraska law applies to the contract claims.  The parties agreed that Nebraska law would govern the contract.  The policy identifies the "Governing Jurisdiction" of the policy as "Nebraska" and also specifies that "this policy is delivered in and is governed by the laws of the governing jurisdiction."  *See* Filing No. 15, Ex. 1 at 1, 11.  There has been no showing that any other state has a greater interest in the dispute or that the application of Nebraska law would violate any fundamental interest of that state.  The insured risk was located in Nebraska and application of Nebraska law will fulfill the expectations of the parties.  Nebraska has the most significant relationship to this contract and to the parties.

Nebraska law expressly prohibits punitive damages.  *See Distinctive Printing & Packaging Co. v. Cox*, 443 N.W.2d 566, 575 (1989) ("punitive, vindictive, or exemplary damages contravene Neb. Const. art. VII, § 5, and thus are not allowed in this jurisdiction").

Accordingly, the court finds plaintiff cannot maintain an action for punitive damages and defendant's motion to dismiss plaintiff's prayer for punitive damages should be granted.

IT IS THEREFORE ORDERED that

1. Defendant's motion to dismiss plaintiff's prayer for punitive damages is granted.

2. Plaintiff's prayer for punitive damages is stricken.

3. The court requests briefing on the issue of this court's jurisdiction and the amount in controversy. Defendant shall file its brief within two weeks of the date of this order; plaintiff shall respond thereto within two weeks thereafter.

4. The Third Amended Final Progression Order, Filing No. 79, remains in force and effect.

DATED this 25th day of August, 2005.

BY THE COURT:

s/ Joseph F. Bataillon
Joseph F. Bataillon
United States District Judge