## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JERRI STOLTENBERG, | ) | |
| | ) | |
| Plaintiff, | ) | 8:04CV288 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| UNUM LIFE INSURANCE COMPANY OF | ) | |
| AMERICA d/b/a | ) | |
| UNUMPROVIDENT CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the defendant's Motion for Severance and Stay of Discovery on Bad Faith Claim (Filing No. 97).  The defendant filed a brief (Filing No. 98) and a reply brief (Filing No. 103) in support of the motion.  The plaintiff filed a brief (Filing No. 100) and an index of evidence (Filing No. 101) in opposition to the motion.  Also, before the court at this time are the plaintiff's Motion to Compel Discovery and for Award of Reasonable Attorneys Fees (Filing No. 71) and the defendant's Second Motion for Protective Order (Filing No. 80), which motions are fully briefed.

## BACKGROUND

The plaintiff worked for the University of Nebraska Medical Center, College of Nursing, in Scottsbluff, Nebraska, from August 1990 until February 2003.  The defendant issued to the University of Nebraska Board of Regents a disability insurance policy on behalf of the plaintiff on January 1, 1999.  The plaintiff alleges she became disabled on or about May 31, 2002, during the pendency of the policy, and remains disabled to the present time.  In October 2002, the plaintiff applied for disability benefits pursuant to such policy.  The defendant denied her application for benefits.  The plaintiff filed a claim for breach of contract and bad faith for her allegedly wrongly-denied benefits.  **See** Filing No. 49.[1]  Based on these claims, the plaintiff seeks special and compensatory damages, and costs and attorney's fees.

---

[1] The court dismissed the plaintiff's prayer for punitive damages.  **See** Filing No. 86.

On November 3, 2005, the defendant moved to sever the plaintiff's claim for bad faith from the claim for breach of contract for purposes of trial and to stay discovery on the bad faith claim. **See** Filing No. 97. The defendant contends such action is necessary to prevent the substantial risk of unfair prejudice during trial to the defendant. Additionally, the defendant argues the severance and stay of discovery would increase judicial efficiency. The plaintiff opposes the motion. The plaintiff contends the defendant's motive for severance is suspect because the defendant waited until nearly eleven months after the bad faith claim was pled to make the motion. Additionally, the plaintiff contends the breach of contract and bad faith claims are interconnected in a manner which would create unjustified inefficiencies if tried separately. The defendant responds that the timing of the motion was necessary to determine the nature of the bad faith claim, which is separate and distinct from the breach of contract claim. The nature of the bad faith claim became more clear after the plaintiff served the discovery requests, which are the subject of the pending motions. In the requests the plaintiff seeks information about other allegations or lawsuits filed against the defendant regarding denial of disability benefits; financial incentives for the defendant's employees to deny benefits; internal polices and training regarding the denial of benefits; and attempts of the defendant to minimize its costs. To the extent the plaintiff's discovery requests do not relate to the bad faith claim, the merits of the motion to compel will be evaluated below.

## ANALYSIS

### A.   Motion to Sever and Stay

"District courts possess broad discretion to bifurcate issues for purposes of trial under Fed. R. Civ. P. 42(b)." ***Eischeid v. Dover Const., Inc.***, 217 F.R.D. 448, 466 (N.D. Iowa 2003); **see *Athey v. Farmers Ins. Exchange***, 234 F.3d 357, 362 (8th Cir. 2000). Under Rule 42(b) of the Federal Rules, the court, "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue . . ." Fed. R. Civ. P. 42(b). The party seeking severance has the burden of proving that separate trials will (1) promote convenience, (2) expedite the proceedings, or (3) avoid unfair prejudice

to a party.  **See *Athey***, 234 F.3d at 362.  A court considers the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion when determining whether to bifurcate claims.  ***Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil***, 704 F.2d 1038, 1042 (8th Cir. 1983).

> Bifurcation may be appropriate in insurance litigation when the insured plaintiff has jointly pleaded tort allegations of bad faith with contract claims for coverage under the insurance policy.  A separate trial on the coverage and bad faith claims may be justified where the evidence relevant to the bad faith trial could be prejudicial in the coverage litigation.  In insurance coverage suits, bad-faith claims against the insurer generally depend on the outcome of contractual coverage claims and the contract and bad faith claims are often severed.  However, bifurcation is not always necessary or justified, and the determination must be made on case-by-case basis.

***Brooks v. Lincoln Nat'l Life Ins. Co., et al.***, 8:05CV118, Filing No. 44 at 3-4 (D. Neb. October 26, 2005) (internal citations omitted).

As stated in the parties' planning conference report, the issues in dispute on the breach of contract claim are whether:

> (1)   while employed by the defendant, the plaintiff became disabled as defined under the terms of the welfare benefit plan;
>
> (2)   the plaintiff is disabled under the terms of the defendant's welfare benefit plan;
>
> (3)   the plaintiff has exhausted, fulfilled, and complied with all the terms of conditions to submit a claim under the defendant's welfare benefit plan (disability benefits policy);
>
> (4)   the defendant has breached its duty to pay under its welfare benefit plan; and
>
> (5)   as a result of the defendant's refusal to pay, the plaintiff has lost and is entitled to recover benefits under the plan.

**See** Filing No. 13.

The plaintiff's contract claim will therefore be based on evidence of the policy terms governing coverage and the calculation of lost benefits, if any; the plaintiff's physical condition and medical history; the duties of her employment; and the scope of her alleged disability from

performing those duties. The primary witnesses to prove these issues include the plaintiff, her medical providers, her employer, and any other person, including those called by the defendant, who is competent to testify as to the nature and extent of plaintiff's alleged disability. The defendant's motivation in denying or discontinuing coverage is irrelevant on the breach of contract claim.

On February 21, 2005, the plaintiff added a claim for bad faith. **See** Filing No. 49. "To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. . . ." ***Braesch v. Union Ins. Co.***, 464 N.W.2d 769, 777 (Neb. 1991); **see *LeRette v. American Med. Sec., Inc.***, 705 N.W.2d 41, 47-48 (Neb. 2005). Accordingly, the finding of breach of contract is a prerequisite to the bad faith claim. **See *Radecki v. Mutual of Omaha Ins. Co.***, 583 N.W.2d 320, 325-26 (Neb. 1998); ***Welfl v. Northland Ins. Co.***, 192 F.3d 1169, 1172-73 (8th Cir. 1999) (affirming judgment as a matter of law on bad faith claim, because the insurer did not "den[y] . . . any benefit due under the insurance contract.").

The second amended complaint alleges the defendant denied benefits in bad faith by engaging in little or no investigation of the plaintiff's claim before making its decision to deny benefits and conducting an inadequate and incompetent investigation into the nature, extent, and severity of the plaintiff's physical condition. **See** Filing No. 49. The plaintiff's discovery requests seek information related to the defendant's motives underlying the denial of benefits including a claim payment policy which may disfavor claimants and financial motives for the defendant and its employees to deny claims. Based on the claims and associated discovery sought, there may be some overlapping evidence and witnesses for trial. To the extent there is overlap, the expense and inconvenience of trial will increase. Additionally, a delay in resolution of the bad faith claim may postpone the plaintiff's ability to recover on that claim. However, the court's foremost concern is a just resolution for all parties. **See** Fed. R. Civ. P. 1.

Although not all bad faith claims must be bifurcated from all contract claims, bifurcation is appropriate in this case. The court finds a joint trial of the issues raised by the plaintiff's bad

4

faith claim may prejudice the defendant's trial on the contract claim.  There is serious risk that evidence of the defendant's alleged unreasonable, reckless, and financially motivated misconduct toward a disabled person will become the focus of the jury's deliberative process and thought, and will remain so when it decides the pivotal issue of whether the defendant breached the insurance contract.  Jury instructions may help to alleviate this risk, but under the facts of this case, a substantial risk of prejudice to the defendant remains.  Introducing wholly irrelevant and highly prejudicial information during the course of an otherwise straightforward contract dispute, and then instructing the jury to disregard such evidence until the breach of contract issue is resolved, may confuse the jury.  Morever, the court concludes that unless the claims are severed for trial, there is a substantial danger the verdict on the contract claim will be motivated by sympathy for the plaintiff and a desire to punish the defendant rather than a fair assessment of those facts relevant to deciding whether the defendant breached the contract.

The plaintiff also stated her concern for the timely resolution of this case.  A bifurcated trial may assist in a more speedy resolution.  However, due to the defendant's motion to dismiss a claim, the court's resolution of a jurisdictional issue and the pending discovery disputes, the case has been essentially on hold.  The trial on the breach of contract claim will take less preparation than a joint trial and result in an earlier trial.  The parties need not invest resources in discovery and other preparation for the bad faith claim.  Finally, unlike a case where the issues of liability and damages are for trial, the only damage recovery delayed by severing the plaintiff's contract and bad faith claims is the plaintiff's non-economic damages. The plaintiff would, however, receive more quickly the award of damages on her breach of contract claim.  Since May 2005, the case was scheduled for trial in March of 2006.  **See** Filing No. 79.  The court will hold a telephone conference with counsel for the parties to determine the likelihood of being prepared for trial as early as March 2006.

For the same reasons the court concluded trial should be bifurcated, the court concludes discovery on the bad faith claim should be stayed.  It is clear, especially from the most recent motion to compel, the bad faith claim raises complicated discovery conflicts. However, the parties may continue to engage in meaningful discovery on the bad faith claim

where appropriate and by mutual agreement. Because the parties' pending discovery motions relate primarily to the bad faith claims they will be denied without prejudice, except as to the issues discussed below.

### B.      Motion to Compel

The court will evaluate the plaintiff's motion to compel as to the issues not related to the bad faith claim. There are three discovery requests.

First, Interrogatory No. 10 states: "Do you contend that Jeri Stoltenburg in any way breached the terms of the disability policy at issue in this case? If so, state all facts upon which you base that contention." **See** Filing No. 71, p. 2. The defendant responded, "No. Unum reserves the right to change or supplement this answer as discovery progresses." *Id.* The plaintiff argues the defendant's response is meaningless, as if it says "no, unless we change our mind." **See** Filing No. 72, p. 43. The plaintiff seeks an unqualified response to "remove the possibility that UNUM will hoard some sort of claim of non-compliance by [the plaintiff] until a point at which she has no time to defend and disprove it." *Id.* The defendant contends it is merely re-stating what the federal rules already allow or require. Specifically, a respondent is under a duty to seasonally supplement or amend a response when the response has become incomplete or incorrect. Fed. R. Civ. P. 26(e). Here the only remedy sought by the plaintiff is to strike the defendant's response after the answer "no." Striking the remainder of the response, which is a correct statement of the defendant's duty under the rules, changes nothing. If the defendant fails to comply with Rule 26(e), the court will address such failure at that time. Accordingly, the plaintiff's motion with regard to Interrogatory No. 10, is denied.

Second, Interrogatory No. 13 states:

> Identify every person involved with the investigation of Plaintiff's claim for disability benefits under the policy at issue in this lawsuit. Your response should include each identified person's job title and the location of the office where he or she primarily works.

**See** Filing No. 72, p. 41.  The defendant responds as follows:  "Please refer to Defendant's Responses to Plaintiff's First Set of Interrogatories, Requests for Production and Request of Admissions, more specifically Interrogatory No. 1."  *Id.*  The plaintiff complains the defendant should not be allowed to reference other responses, but should give a responsive answer without the plaintiff having to "hunt through our files for previous responses."  In support of her position, the plaintiff cites **Scaife v. Boenne**, 191 F.R.D. 590, 594 (N.D. Ind. 2000).  The **Scaife** court held

> It is well established that an answer to an interrogatory "must be responsive to the question.  It should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers."

*Id.* (internal citations omitted).  However, the **Scaife** opinion makes it clear the focus is whether the answer is responsive to the question.  The mere fact that an answer refers to other discovery is not, on that basis alone, non-responsive.  Here, the defendant referenced prior discovery responses and specified Interrogatory No. 1.  The plaintiff failed to provide the court with either the interrogatory or its response.  Therefore, it is impossible to determine whether the answer is responsive to the question.  The burden of showing the answer was not responsive is on the plaintiff.  The plaintiff failed to meet the burden as to this interrogatory.  In any event, the defendant asserts it has provided the plaintiff with a list of the persons who participated in the plaintiff's claim, as reflected in the claim file, and any other person who has knowledge of the plaintiff's claim.  **See** Filing No. 81, p. 13.  Accordingly, the plaintiff's motion with regard to Interrogatory No. 13, is denied.

Finally, Request for Production No. 4 states:  "To the extent not previously produced, please produce your entire claims file for this claim."  **See** Filing No. 72, p. 41.  The defendant responded, "The requested documents have been produced."  *Id.*  The defendant's response is exactly what the plaintiff should have expected, especially since the request explicitly states, "*To the extent not previously produced*."  Although, the plaintiff hints in a footnote that the defendant uses this "tactic" in other cases, the court is without foundation for finding the

defendant failed to produce the requested claim file or any part thereof. Accordingly, the plaintiff's motion with regard to Request for Production No. 4, is denied.

The court will not assess sanctions against the plaintiff associated with denying the motion to compel. Under Rule 37(a)(4), the court has the authority to assess sanctions, but declines to do so because the defendant did not request sanctions and such sanctions would be unjust under the circumstances. The court cautions both parties to desist in petty squabbling with regard to discovery. Under the federal rules, discovery is meant to facilitate litigation through investigation into relevant matters, rather than as a means of annoyance, embarrassment and undue burden. **See** Rule 26. The court encourages the parties to make more sincere attempts to resolve the pending issues, if necessary after trial on the contract claim, between themselves to avoid further sanctions and to narrow such issues for the court. Sanctions shall be assessed on any future discovery motions in accordance with the rules. **See** Fed. R. Civ. P. 37(a)(4). Upon consideration,

**IT IS ORDERED:**

1.      The defendant's Motion for Severance and Stay of Discovery on Bad Faith Claim (Filing No. 97) is granted.

2.      Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, the plaintiff's contract claim and her tort claim for insurance bad faith shall be tried separately, with the contract claim tried first.

3.      Subject to any mutual agreement between the parties to the contrary, discovery on the insurance bad faith claim is stayed pending resolution of the contract claim.

4.      A telephone conference with the undersigned magistrate judge will be held on **December 19, 2005 at 3:00 p.m.** for the purpose of reviewing the preparation of the contract claim to date and the scheduling of the case to trial. Counsel for the plaintiff shall initiate the telephone conference.

5.      The plaintiff's Motion to Compel Discovery and for Award of Reasonable Attorneys Fees (Filing No. 71) is denied with regard to Interrogatory Nos. 10 and 13 and

Request for Production No. 4.  In all other respects, the plaintiff's motion is denied without prejudice to re-filing as needed after resolution of the contract claim.

6.      The defendant's Second Motion for Protective Order (Filing No. 80) is denied without prejudice to re-filing as needed after resolution of the contract claim.

## ADMONITION

Pursuant to NECivR 72.2 any appeal of this Order shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Order.  Failure to timely appeal may constitute a waiver of any objection to the Order.  The brief in support of any appeal shall be filed at the time of filing such appeal.  Failure to file a brief in support of any appeal may be deemed an abandonment of the appeal.

DATED this 12th day of December, 2005.

BY THE COURT:

 s/Thomas D. Thalken
United States Magistrate Judge